**Gilberto ARVELO, Plaintiff**

v.

**AMERICAN INTERNATIONAL INSURANCE COMPANY, Defendant.**

Civ. No. 93–1287 (JP).

United States District Court, D. Puerto Rico.

Feb. 9, 1995.

Peter John Porrata, Hato Rey, PR and Celso López, San Sebastián, PR, for plaintiff.

Lisa Bhatia Gautier, Cordero, Miranda & Pinto, San Juan, PR, for defendant.

## OPINION AND ORDER

PIERAS, District Judge.

The Court has before it defendant's Motion for Summary Judgment (docket No. 40), plaintiff's Opposition to Motion for Summary Judgment and Motion for Partial Summary Judgment (docket No. 49), and the respective supplements to their motions.

Plaintiff, Gilberto Arvelo, filed the instant case alleging copyright infringement, trademark infringement and violation of principles of unfair competition under the Lanham Act against defendant, American International Insurance Company ("AIIC"), for defendant's use of the name "Retail Plus" as the title for its small business owner insurance policy. Plaintiff alleges that he created the name "Retail Plus" and that AIIC infringed upon the copyright of his proposed advertising campaign, infringed general trademark principles and misappropriated his intellectual property by using the name "Retail Plus" for its insurance policy. Defendant admits that it used the title "Retail Plus" for its

insurance policy, but denies that this action violates any federal statute.

For the following reasons, defendant's motion is hereby **GRANTED** and plaintiff's motion is hereby **DENIED.**

## I. UNCONTESTED FACTS

The parties jointly stipulated that the following are uncontested facts:

1. Plaintiff, Mr. Gilberto Arvelo, is a publicist and resident of Puerto Rico.

2. Defendant, American International Insurance Company, is an insurance company incorporated under the laws of the Commonwealth of Puerto Rico.

3. AIIC developed an insurance policy for small business owners during the spring of 1991. An authentic, complete and accurate copy of AIIC's insurance policy entitled "Retail Plus" is found as Exhibit D to defendant's Motion for Summary Judgment (docket No. 40), which was submitted in defendant's Motion Submitting Documents (docket No. 47).

4. AIIC held a competition between its employees in order to chose a new name for the policy. Between thirty and forty names were suggested during this competition, however, none of those names was selected.

5. Mr. Carlos Amy, the AIIC marketing manager in charge of developing the new insurance policy, invited Mr. Gilberto Arvelo to create an advertising campaign for AIIC, including ideas for marketing the new insurance policy. They also asked Mr. Arvelo to produce a name for the policy.

6. Mr. Arvelo created such an advertising campaign for AIIC and presented the campaign to AIIC corporate officers on May 14, 1991. In conjunction with the advertising campaign, Mr. Arvelo invented the name "Retail Plus" for the new insurance policy.

7. Defendant had access to Mr. Arvelo's entire advertising campaign, including the name "Retail Plus", during Mr. Arvelo's presentation to AIIC corporate officers on May 14, 1991.

8. Soon after the presentation, Mr. Amy notified Mr. Arvelo that AIIC was not inter-

ested in implementing his whole advertising campaign; AIIC was only interested in the name, "Retail Plus", which Mr. Arvelo had suggested for AIIC's new insurance policy.

9. AIIC offered to pay Mr. Arvelo Two Hundred and Fifty Dollars ($250.00) for the name "Retail Plus".

10. Mr. Arvelo rejected AIIC's offer of paying Two Hundred and Fifty dollars ($250.00) for the name "Retail Plus".

11. Mr. Amy, the marketing manager who had negotiated with Mr. Arvelo for the use of the name "Retail Plus", suggested to other AIIC department heads that AIIC adopt the name "Retail Plus" for its insurance policy.

12. The department heads reached a consensus and adopted the name "Retail Plus" for AIIC's insurance policy.

13. On November 20, 1991, AIIC received trademark registration for the trademark "Retail Plus" at the Division of Corporations and Trademarks of the Department of State, Commonwealth of Puerto Rico, number 30,-476.

14. On September 18, 1992, Mr. Arvelo obtained federal registration copying the advertising campaign that he had created for AIIC, number TX 538 977. An authentic, complete and accurate copy of Mr. Arvelo's copyrighted advertising campaign is found as Exhibit D to defendant's Motion for Summary Judgement (docket No. 40) which was submitted in defendant's Motion Submitting Documents (docket No. 47). Plaintiff accepted that this is a true copy of his copyrighted advertising campaign.

15. Plaintiff admits that ten pages of the twenty-eight page copyrighted advertising campaign contain public information and are therefore not copyrightable material.

16. Six pages are dedicated to "American International Insurance Media Recommendation" containing cost estimates of advertising for different stages of the proposed media campaign.

17. Four pages contain a breakdown of the different types of newspaper advertisements, a list of when the suggested advertisements should appear in the newspapers, and an approximation of the cost of the advertising during each stage.

18. The remaining eight pages of Mr. Arvelo's advertising campaign contain four proposals for advertisements. For each proposed advertisement, there is a copy of the actual advertisement, followed by a one-page textual description of the advertisement.

19. Defendant's twenty-six page insurance policy is titled "Retail Plus". It is a general business liability policy designed for small business owners, containing detailed terms and conditions for compliance with insurance coverage, such as what is covered and what is excluded under the policy; what are the policy limits and deductibles; specific and general conditions regarding property loss; and provisions on optional coverage.

20. The name "Retail Plus" is mentioned at least three times in the insurance policy, on the first page of every section: property coverage, general liability coverage, and common policy conditions.

21. Plaintiff admits that AIIC did not copy any other aspect of his copyrighted advertising campaign, besides the name "Retail Plus" and that both documents are not substantially similar.

22. Plaintiff did not obtain any trademark registration, either federal or in the Commonwealth of Puerto Rico, for the mark "Retail Plus".

23. Plaintiff never sold any good or service under the name "Retail Plus", nor used the name in any other capacity with the exception of the proposal, which was later on copyrighted.

## II. MOTION FOR SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment in a case where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir.1993);

*Brennan v. Hendrigan,* 888 F.2d 189, 191 (1st Cir.1989); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 894 (1st Cir.1988).

Summary judgment is appropriate where, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, there is not the slightest doubt as to whether a genuine issue of material fact exists. *Kennedy v. Josephthal & Co.,* 814 F.2d 798, 804 (1st Cir.1987); *Peckham v. Ronrico Corp.,* 171 F.2d 653 (1st Cir.1948). A "genuine" issue is one that is dispositive, and which consequently must be decided at trial. *Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir. 1989); *Anderson v. Liberty Lobby,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A material fact, which is defined by the substantive law, is one which affects the outcome of the suit and which must be resolved before attending to related legal issues. *Mack,* 871 F.2d at 181.

The party filing a motion for summary judgment bears the initial burden of proof to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Thereafter, the burden shifts to the non-movant to provide the Court, through the filing of supporting affidavits or otherwise, with "some indication that he can produce the quantum of evidence [necessary] to enable him to reach the jury with his claim." *Hahn v. Sargent,* 523 F.2d 461, 468 (1st Cir.1975); *see also Brennan,* 888 F.2d at 191. The non-movant cannot rest upon mere allegations or denial of the pleadings. Fed. R.Civ.P. 56(e). Indeed, the non-movant must affirmatively show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of truth at trial." *First National Bank v. Cities Service Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). On issues where the non-movant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion. *See Anderson,* 477 U.S. at 256–57, 106 S.Ct. at 2514–15.

## III. COPYRIGHT INFRINGEMENT

■ The owner of a federally registered copyright has the exclusive right to reproduce the copyrighted work, 17 U.S.C. § 106, and violation of that right can constitute infringement, 17 U.S.C. § 501. To establish a claim of copyright infringement, plaintiff has the burden of proving that defendant copied the protected work. *Motta v. Samuel Weiser Inc.,* 768 F.2d 481, 483 (1st Cir.), *cert. denied,* 474 U.S. 1033, 106 S.Ct. 596, 88 L.Ed.2d 575 (1985). *Concrete Machinery Company, Inc. v. Classic Lawn Ornaments, Inc.,* 843 F.2d 600, 605 (1st Cir.1988).

■ Since direct evidence that defendant has copied plaintiff's work is generally unobtainable, copying can be inferred from two elements: first, that defendant had access to plaintiff's work, and second, that defendant's product is "substantially similar" to plaintiff's work. *Concrete,* 843 F.2d at 606; *O'Neill v. Dell Pub. Co.,* 630 F.2d 685, 686 (1st Cir. 1980); *Warner Bros., Inc. v. American Broadcasting Cos.,* 654 F.2d 204, 207 (2nd Cir.1981). It is undisputed that AIIC had access to Arvelo's work and ideas during his 1991 presentation to the officers of AIIC. Therefore, the only remaining issue is whether AIIC's work was substantially similar to Arvelo's product.

■ The question of substantial similarity involves a two step analysis. First, as a preliminary matter of law, the Court must establish which aspects of plaintiff's work are protected by his copyright and whether defendant copied those protected aspects.

> By dissecting the accused work and identifying those features which are protected in the copyrighted work, the court may be able to determine as a matter of law whether or not the former has copied protected aspects of the latter. *Concrete,* 843 F.2d at 608.

If the Court determines that defendant's work copies plaintiff's copyrighted product, then in the second step, the two works are compared under the "ordinary observer" test. Under this test, the two works are considered substantially similar if "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook

them, and regard their aesthetic appeal as the same." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir.1960).

The second step of the inquiry involves a comparison of fact-specific details of the two works in question, and as such, is generally not susceptible to decision in a motion for summary judgment. However, when there is no possibility that a reasonable person could find any similarity between the two products, summary judgment is appropriate. *O'Neill v. Dell Pub. Co.*, 630 F.2d 685, 690 (1st Cir.1980).

■ By applying the test to the case at bar, the Court must first determine whether defendant's insurance policy copies any of the protected aspects of plaintiff's advertising campaign. The "accused work" is defendant's twenty-six page insurance policy, entitled "Retail Plus". It is a general business liability policy designed for small business owners. The heart of the work contains the detailed terms and conditions for compliance with insurance coverage, such as what is covered and what is excluded under the policy; what are the policy limits and deductibles; specific and general conditions regarding property loss; and provisions on optional coverage. The name "Retail Plus" is mentioned at least three times, on the first page of every section: property coverage, general liability coverage and common policy conditions.

Plaintiff argues that defendant, by using the name "Retail Plus" for the title of its insurance policy, copied an integral part and a substantial portion of his copyrighted advertising campaign. Plaintiff's contention that "Retail Plus" is an integral part of the campaign, however, is not supported by the evidence. Furthermore, the words "Retail Plus", in and of themselves, separated from the rest of the advertising campaign, are not copyrightable material. Therefore, defendant's reproduction of two words, which are nonprotected aspects of the copyrighted material, does not constitute copyright infringement.

From the uncontested facts, the parties stipulate that ten pages of plaintiff's copyrighted advertising campaign contain public information and are therefore not copyrightable material. Ten other pages contain cost estimates of advertising for different stages of the proposed media campaign, and a breakdown of the different types of newspaper advertisements, a list of when the suggested advertisements should appear in the newspapers and an approximation of the cost of the advertising during each stage. Of these ten pages, the name for AIIC's new insurance policy is mentioned on three separate pages.

On all of these pages, Arvelo refers to AIIC's new insurance policy as "Retailer Plus", not "Retail Plus". There is a substantial difference between the name "Retail Plus", which emphasizes retail sale contrasted with wholesale, and "Retailers Plus", which focuses on the individual selling the goods. The presence of two distinct suggestions for AIIC's insurance policy titles undermines Arvelo's assertion that the name, "Retail Plus", was an essential component of his advertising campaign.

Further examination of the same document shows that the only place where the actual words, "Retail Plus", and not "Retailer Plus", appear is in a proposed newspaper advertisement. This ad sports the slogan: "Until now, nobody thought about small business merchants," placed next to a drawing of a hand holding a brochure of insurance policy. At the top of the brochure are the words "Retail Plus", with the AIIC logo prominently displayed in the bottom corner. The appearance of the words "Retail Plus", once in a twenty-eight page campaign, does not demonstrate that those two words comprise a substantial portion of plaintiff's copyright.

■ Moreover, the two words, "Retail Plus", are not copyrightable component parts of the advertising campaign. "Words and short phrases such as names, titles and slogans" are examples of materials not subject to copyright protection. 37 C.F.R. 202.1(a). *See Perma Greetings, Inc. v. Russ Berrie & Co.*, 598 F.Supp. 445 (E.D.Mo.1984) (copyright office denied copyright protection for three Mug–Mat, coaster designs containing phrases such as "Hang in There," because words are not copyrightable material); and

*Alberto–Culver Co. v. Andrea Dumon, Inc.,* 466 F.2d 705, 710 (7th Cir.1972), (copyright of entire advertising label of a feminine deodorant spray did not extend additional copyright protection to the phrase "most personal sort of deodorant", a portion of the label). Arvelo's copyright protects the advertising campaign in its entirety, not merely two words of the whole document.

Plaintiff does not allege that defendant copied any aspect of the protected product, other than the name "Retail Plus". It is undisputed that defendant AIIC did not use any of the Arvelo's proposed advertisements or suggestions for marketing its new insurance policy. The only aspect which plaintiff alleges was copied, was the name, "Retail Plus". The words "Retail Plus" did not form a substantial portion of his advertising campaign, nor are the words "Retail Plus" subject to copyright protection if dissected from the surrounding advertising campaign. Therefore, as a matter of law, plaintiff has not met its burden of showing that defendant copied any protected feature of his advertising campaign.

■ Even assuming that Arvelo were able to prove that AIIC's use of the name "Retail Plus" constitutes copying of his copyrighted work, the parties stipulate that the two works are not substantially similar. Plaintiff's work is an advertising campaign focusing on the type of media coverage, the content of the suggested advertisements, an estimation of the cost of the media campaign, and suggested timing of when the advertisements should run in marketing AIIC's insurance policy. On the other hand, defendant's work is a detailed insurance policy focusing on the type of insurance coverage, which individual and business property is covered under the policy, which incidents are covered, what is the extent of the insurance coverage and other requirements. The only similarity between the works are the two words "Retail Plus", which appear once in the twenty-eight page advertising campaign and three times in the twenty-six page insurance policy. There is no possibility that a reasonable person would find any similarity between Arvelo's advertising campaign and AIIC's insurance policy.

As AIIC neither copied any protected aspect of Arvelo's advertising campaign, nor is AIIC's insurance policy substantially similar to Arvelo's campaign, there is no genuine issue of material fact regarding copyright infringement.

## IV. LANHAM ACT—TRADEMARK INFRINGEMENT

■ Rights in trademarks are primarily common law property rights acquired by the first party to appropriate the mark and use it in connection with a particular business, *Jordan K. Rand, Ltd. v. Lazoff Bros., Inc.,* 537 F.Supp. 587, 593 (D.P.R.1982); *Keebler Co. v. Rovira Biscuit Corp.,* 624 F.2d 366, 372 (1st Cir.1980); *Volkswagenwerk Aktiengesellschaft v. Wheeler,* 814 F.2d 812, 815–16 (1st Cir.1987).

Plaintiff admits that he never obtained trademark registration for the name "Retail Plus". Nonetheless, he argues that he is entitled to protection under the Lanham Act as the inventor of the name. Arvelo specifically invented several names for the new policy, including "Retail Plus", at the request of Mr. Amy, AIIC marketing manager. A year later, after AIIC rejected Arvelo's advertising ideas, Arvelo obtained federal copyright protection for his twenty-eight page advertising campaign which contained the name "Retail Plus". Arvelo asserts that he invented the name "Retail Plus", and that AIIC violated his trademark protections by using the name without his permission.

■ Rights in a trademark, however, cannot be obtained through discovery or invention alone. *McCarthy on Trademarks and Unfair Competition* § 16.03 at 16–16 (3rd Ed.1994). Some actual use of the trademark, such as affixing a label to a good which is sold in commerce, is necessary to establish use. Neither conception of an idea for a mark, nor solicitation of advertising business constitute use of the trademark sufficient to acquire proprietary rights in the mark. *Gordon Bennett & Associates, Inc. v. Volkswagen of America, Inc.,* 186 U.S.P.Q. (BNA) 271, 1975 WL 21160 (N.D.Cal.1975) (invention of the term "Security Blanket" in conjunction with the advertising promotion of

the use of bank passbooks for savings account holders did not entitle inventor of the name to rights in the "Security Blanket" mark.)

Merely inventing the name "Retail Plus" and presenting it to defendant did not constitute use of the name sufficient for trademark protections to attach. From the uncontested facts, it is undisputed that Arvelo never sold any insurance, or any other good or service, named "Retail Plus". Since plaintiff never used the mark "Retail Plus" in connection with the sale of services, he has not acquired any proprietary rights in the mark. Therefore, AIIC's use of the name "Retail Plus" as suggested by Arvelo, does not violate any federal trademark protection.

Even if plaintiff were able to establish that he had some proprietary rights in the name "Retail Plus", he is unable to prove that defendant's use of the name "Retail Plus" constitutes trademark infringement. Under 15 U.S.C. § 1114(1)(a), plaintiff must demonstrate that any person who, without the consent of the trademark owner:

> [U]se[s] in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services or in connection with which such use *is likely to cause confusion, or to cause mistake, or to deceive*
>
> \*    \*    \*    \*    \*    \*
>
> shall be liable in a civil action by the registrant for the remedies hereinafter provided. (Emphasis supplied)

Therefore, the likelihood of confusion is the main element of a trademark infringement claim. *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 486–87 (1st Cir.1981). Because, "[a] trademark owner has a property right only insofar as is necessary to prevent customer confusion as to who produced the goods and to facilitate differentiation of the trademark owner's goods." *International Order of Job's Daughters v. Lindeburg & Company*, 633 F.2d 912, 919 (9th Cir.1980).

The First Circuit has delineated eight factors which shall be considered in order to determine whether there is a likelihood of confusion: similarity of the marks and goods; relationship between plaintiff's and defendant's channel of trade; advertising; classes of prospective customers; actual confusion; intent in adopting mark; and strength of the mark. *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 817 (1st Cir.1987). All of these factors weigh against the consideration that there would be the likelihood of confusion among relevant consumers.

Plaintiff, as an advertising agent, sold ideas to companies on how to effectively market their products. His prospective customers were corporate entities, including insurance companies such as defendant. On the other hand, defendant sold insurance policies to individuals or corporations. In particular, the policy "Retail Plus" was aimed at the small retail merchant interested in purchasing a policy to cover general liabilities of a small business. Even though defendant adopted the exact same words in its mark as that suggested by plaintiff, there is no possibility that one of plaintiff's customers, a corporation interested in buying advertising services, would confuse defendant's insurance policies with plaintiff's advertising campaigns.

Because plaintiff has no proprietary rights in the mark "Retail Plus", and because there was no likelihood of confusion among the consuming public, it is not necessary to determine whether plaintiff, in his conversations with Mr. Amy, consented to allow AIIC to use the name, "Retail Plus".

## V. UNFAIR COMPETITION UNDER LANHAM ACT SECTION 43(a)

Plaintiff further alleges that defendant violated the provisions of Section 43(a) regarding unfair competition through false designation of goods, which states in pertinent part:

> Any person who shall ... use in connection with any goods or services a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe

or represent the same and shall cause such goods to enter commerce, ... shall be liable to a civil action ... by any person who believes that he is or is likely to be damaged by the use of such false designation or representation.

This language is broad enough to confer standing upon any individual who believes that he is harmed by defendant's use of the trademark. "Thus, one need not be the owner of a federally registered trademark to have standing." *Quabaug Rubber Co. v. Fabiano Shoe Co.,* 567 F.2d 154, 160 (1st Cir.1977). The basis of this cause of action is likelihood of public's confusion as to the source of the goods or services. *Id.* Since this cause of action is "designed to reach, among other things, attempts to appropriate the goodwill associated with a competitor's trademark by means of confusingly similar marking and packaging, which would create an impression that the products of the defendant originated with the plaintiff." *Purolator, Inc. v. EFRA Distributors,* 687 F.2d 554, 560 (1st Cir.1982).

The same facts used to support a claim for trademark infringement are used to support a claim for unfair competition. *Jordan K. Rand, Ltd. v. Lazoff Bros. Inc.,* 537 F.Supp. 587, 597 (D.P.R.1982). As already discussed, there is no possibility of any confusion among members of the public regarding the source of the services in question. AIIC was the supplier of the insurance policy regardless of the origin of the name of one of its policies. AIIC's customers or other members of the general public would not associate the name "Retail Plus" with plaintiff's advertising business.

## VI. CONCLUSION

Defendant's use of the words "Retail Plus" for the title of its insurance policy does not constitute copying of any protected aspect of plaintiff's advertising campaign. Therefore plaintiff has no cause of action for copyright infringement. Plaintiff did not acquire a proprietary right over the mark because he never used the words "Retail Plus" in the sale of goods or services. Furthermore, defendant's use of the trademark "Retail Plus" could not possibly cause confusion among members of

the general public regarding its' use of the trademarks or the source of origin of defendant's services.

Defendant's motion for summary judgment is hereby **GRANTED** and plaintiff's partial motion for summary judgment is **DENIED.** Judgement dismissing the complaint will be entered accordingly.

IT IS SO ORDERED.